**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jane Doe, et al., | No. CV-24-02259-PHX-MTL |
| Plaintiffs, | **ORDER** |
| v. | |
| Kris Mayes, et al., | |
| Defendants. | |

In this action challenging revisions to Arizona's sex offender registration and reporting statutes, Defendants Arizona Attorney General Kristin Mayes and Colonel Jeffrey Glover, Director of the Arizona Department of Public Safety, move to dismiss the Attorney General for Eleventh Amendment Immunity. (Doc. 148.) They also move to dismiss Counts 1-9 and 13[1] of the First Amended Complaint for failure to state a claim. (*Id.*) Defendant David Hathaway, the Santa Cruz County Sheriff, joins. (Doc. 151.) For the following reasons, the Court will grant the motion in part and deny it in part.

**I.   BACKGROUND**

In 2024, the Arizona Legislature passed, and Governor Hobbs signed, Senate Bills 1236 and 1404. 2024 Ariz. Sess. Laws ch. 57 §§ 1-2 (hereinafter "S.B. 1404"); 2024 Ariz. Sess. Laws ch. 158 § 1 (hereinafter "S.B. 1236"). Both bills amended Arizona's sex offender registration and notification statutes, imposing different registration, publication,

---

[1] The First Amended Complaint refers to Plaintiffs' causes of action as "claims," while Defendants' motion to dismiss refers to them as "counts." The Court will follow Defendants' approach and refer to them as "counts."

and community notification requirements on certain offenders.

Three of the four Plaintiffs are level one sex offenders convicted of dangerous crimes against children. (Doc. 82 at 4-8); *see also* A.R.S. § 13-705(T) (defining "dangerous crimes against children"). The fourth is the minor child of a level one sex offender convicted of a dangerous crime against children. (*See* Doc. 82 at 7-9.) Plaintiffs argue Senate Bills 1236 and 1404 violate their rights under state and federal law. Counts 1-12 of the First Amended Complaint allege various constitutional injuries.[2] Count 13 alleges a claim for false light invasion of privacy under Arizona law. Plaintiffs seek injunctive relief and declaratory judgment. (*Id.* at 53-54.)

## II.   LEGAL STANDARDS

### A.   Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) authorizes a court to dismiss claims for lack of subject matter jurisdiction. Eleventh Amendment sovereign immunity is "quasi-jurisdictional in nature and may be raised" in a Rule 12(b)(1) motion. *Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d 923, 927 n.2 (9th Cir. 2017). When raised, "the party asserting subject matter jurisdiction has the burden of proving its existence, *i.e.* that immunity does not bar the suit." *Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015) (internation quotation marks omitted) (quoting *Miller v. Wright*, 705 F.3d 919, 923 (9th Cir. 2013) (internal quotation marks omitted)).

### B.   Rule 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A court may dismiss claims lacking a cognizable legal theory or sufficient factual allegations to support a cognizable legal theory. *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (internal quotation marks and citation omitted). Sufficient factual allegations are those that, when taken as true, state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

---

[2] The First Amended Complaint does not contain a count eleven. Instead, it lists Counts 1-10 and skips to Count 12.

Plausibility is more than mere possibility; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When analyzing the sufficiency of a complaint, the well-pled factual allegations "are taken as true and construed in the light most favorable to the [plaintiff]." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009) (internal quotation marks and citation omitted).

## III. DISCUSSION

### A. Proper Parties

Attorney General Mayes argues that she is not a proper party to this litigation for two reasons. First, the Eleventh Amendment of the United States Constitution grants her sovereign immunity. (Doc. 148 at 2.) Second, the First Amended Complaint fails to allege that she exercises any enforcement authority over the challenged sex offender laws. (*Id.*). Similarly, Sheriff Hathaway argues that he is not a proper party because the First Amended Complaint states no factual allegations implicating himself or any Santa Cruz County official to the challenged laws. (Doc. 151 at 2.)

Whether a state official, acting in their official capacity, is a proper defendant is "the common denominator of two separate inquiries." *Planned Parenthood of Idaho, Inc. v. Wasdin*, 376 F.3d 908, 919 (9th Cir. 2004). The first asks "whether there is the requisite causal connection between [the official's] responsibilities and any injury that the plaintiffs might suffer." *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). The second asks whether "jurisdiction over the defendant[] is proper under the doctrine of *Ex parte Young*." *Id.*

#### 1. Eleventh Amendment Immunity

The Eleventh Amendment generally prevents federal courts "from entertaining suits brought by a private party against a state or its instrumentalit[ies]" without state consent. *L.A. Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992). The doctrine of *Ex parte Young*, however, is an exception to this general rule. 209 U.S. 123, 157 (1908). It allows "actions for prospective, declaratory, or injunctive relief against state officers in their

official capacities for their alleged violations of federal law," *Coal. to Def. Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012), provided the official sued has "some connection with the enforcement of the act." *Ex parte Young*, 209 U.S. at 157. That "connection must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision" is not enough. *Eu*, 979 F.2d at 704.

County sheriffs and the Arizona Department of Public Safety implement the statutes amended by Senate Bills 1236 and 1404. *See, e.g.*, A.R.S. §§ 13-3821(A), 13-3825(B). County attorneys further enforce the affected statutes by prosecuting non-compliant sex offenders. *See id.* § 11-532(A)(1). Attorney General Mayes has no statutory role in either implementation or enforcement. Without a specific grant of statutory authority, she has no direct connection to the challenged laws. *See State ex rel. Brnovich v. Ariz. Bd. of Regents*, 250 Ariz. 127, 130, 132 (2020) (finding the Arizona Attorney General has no "inherent or common law authority" and can only take specified legal actions authorized by statute).

Only three statutes indirectly connect Attorney General Mayes's office to the challenged legislation. The first, A.R.S. § 41-192(A), explains the Attorney General is the chief legal officer for the State of Arizona. The second, A.R.S. § 41-193(A)(5), authorizes the Attorney General, "[a]t the direction of the governor, or if deemed necessary" to assist county attorneys in the discharge of their duties. The third, A.R.S. § 13-3828(F), requires the Attorney General to assist and provide information to Arizona's Sex Offender Management Board.

As Arizona's chief legal officer, the Attorney General has some supervisory authority over county attorneys and could, in theory, proactively assist county attorneys whenever she deems necessary. A.R.S. §§ 41-192(A), 41-193(A)(5). But these are general grants of statutory authority and do not place the Attorney General within the causal chain of implementing or enforcing Senate Bills 1236 and 1404. *See Matsumoto v. Labrador*, 122 F.4th 787, 802 (9th Cir. 2024) (explaining there must be a connection between the challenged statute and the state official's authority to act). Likewise, her responsibilities to

Arizona's Sex Offender Management Board have no connection to Plaintiffs' alleged injuries. Thus, the Court finds none of these statutes establish a "fairly direct" connection between the Attorney General and the enforcement of Senate Bills 1236 and 1404. *See Eu*, 979 F.2d at 704 (stating the "connection must be fairly direct"). That lack of connection means the Eleventh Amendment bars the Attorney General from this lawsuit. *Id.*

Plaintiffs argue Eleventh Amendment immunity "should be analyzed as an affirmative defense under Rule 12(b)(6), not as a jurisdictional issue under Rule 12(b)(1)." (Doc. 157 at 4-5, 15.) This ignores the long-standing practice that a party can raise Eleventh Amendment immunity at the motion to dismiss stage. *See Pistor*, 791 F.3d at 1111; *Sato*, 861 F.3d at 927 n.2 ("A sovereign immunity defense is quasi-jurisdictional in nature and may be raised in either a Rule 12(b)(1) or 12(b)(6) motion.").

The Court concludes Attorney General Mayes is not a proper party and must be dismissed due to Eleventh Amendment sovereign immunity.

### 2. Standing

Standing requires Plaintiffs "demonstrate: (1) that they have suffered an injury-in-fact, (2) that their injury is fairly traceable to [D]efendant's conduct, and (3) that their injury would likely be redressed by a favorable decision." *Matsumoto*, 122 F.4th at 797. Traceability occurs when there is "a causal connection between the injury and the conduct complained of." *Lujan*, 504 at 560. An injury is fairly traceable when "the links in the proffered chain of causation are not hypothetical or tenuous and remain plausible." *Ass'n of Irritated Residents v. EPA*, 10 F.4th 937, 943 (9th Cir. 2021) (citation and internal quotation marks omitted).

A chain of causation exists between a challenged law and a defendant with enforcement authority. *See Matsumoto*, 122 F.4th at 799. Plaintiffs allege Senate Bills 1236 and 1404 infringe on their state and federal constitutional rights. (*See* Doc. 82 at 31-52.) County sheriffs play a direct role in implementing Arizona's sex offender laws. For example, they collect the registration information of level one offenders convicted of dangerous crimes against children and distribute that information to local communities.

*See, e.g.*, A.R.S. §§ 13-3821(J), 13-3825(C). Sheriff Hathaway, as the sheriff of Santa Cruz County, has authority to implement the statutory changes Plaintiffs challenge. The Court, therefore, finds that authority satisfies the traceability element of standing. *See Matsumoto*, 122 F.4th at 800 (finding an attorney general's sole discretion to prosecute a statute satisfies traceability).

Moreover, dismissing Sheriff Hathaway would limit the Court's ability to grant complete relief in Santa Cruz County. "[T]he scope of injunctive relief is dictated by the extent of the violation established, not the geographical extent of the plaintiff class." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). Here, Plaintiffs seek injunctive relief to prevent the continued enforcement of Senate Bills 1236 and 1404 statewide, which Plaintiffs allege violate the rights of citizens across Arizona. (Doc. 82 at 53-54.) If Plaintiffs' allegations are true, statewide relief would be the only appropriate remedy.

The Court concludes Sheriff Hathaway is a proper party.

## B. Failure to State a Claim

Colonel Glover and Sheriff Hathaway ("Defendants") argue Counts 1-9 and 13 fail to state a claim upon which relief can be granted.[3] (Doc. 148 at 2.) They reserve challenging Counts 10 and 12 "because resolution of [those] claim[s] may require the Court to take notice of matters outside the complaint (*e.g.*, research studies and material prepared by criminal justice agencies)." (*Id.* at 2 n.2, n.3.)

### 1. Counts 1-2 and 4: Procedural Due Process

Plaintiffs allege Senate Bills 1236 and 1404 violate their Fourteenth Amendment procedural due process rights by expanding registration, publication, and community notification requirements without providing a hearing. (Doc. 82 ¶ 171, ¶ 183, ¶ 210.)

Analyzing a procedural due process claim requires two steps. "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *United States v. Juv. Male*, 670 F.3d 999, 1013 (9th Cir. 2012)

---

[3] Attorney General Mayes also moves to dismiss these counts. But the Court will dismiss her from this lawsuit.

- 6 -

(quoting *Carver v. Lehman*, 558 F.3d 869, 872 (9th Cir. 2009)).

It remains undecided whether registration and notification schemes interfere with sex offenders' liberty interests under the Due Process Clause.[4] *See Am. C.L. Union of Nev. v. Masto*, 670 F.3d 1046, 1059 (9th Cir. 2012). But assuming interference did occur, Plaintiffs have not alleged that deprivation resulted from constitutionally infirm procedures.

The new internet publication and community notification requirements only affect certain level one offenders convicted of a "dangerous crime against children," as defined in A.R.S. § 13-705(T)(1).[5] *See* S.B. 1236 § 1; S.B. 1404 § 3. Section 13-705(T)(1) only applies when an offender commits a specific offense against a specific type of victim. *See* A.R.S. §13-705(T)(1). Similarly, the new registration requirements only apply when an offender must register with their local county sheriff—a requirement imposed when the offender commits a crime listed in A.R.S. § 13-3821(A). *See* S.B. 1404 § 1; A.R.S. § 13-3821(A) (requiring sex offenders who commit an offense listed in § 13-3821(A)(1)-(22) to register anytime they remain in a county for more than seventy-two hours). All three requirements, and therefore the applicability of Senate Bills 1236 and 1404, depend on an offender's prior conviction. *See* S.B. 1236 § 1; S.B. 1404 § 1, § 3.

Under step two, "[a]dditional process is only necessary whe[n] it gives a sex offender the ability to prove or disprove facts related to the applicability of the []

---

[4] Plaintiffs cite several out-of-circuit cases arguing "registration and notification requirements implicate liberty interests" that trigger the right to due process. (Doc. 157 at 5 n.2.) Those cases, however, predate the United States Supreme Court's decision in *Smith v. Doe*, 538 U.S. 84 (2003), which the Ninth Circuit found "casts doubt on whether a registration and notification scheme based solely on the fact of a registrant's conviction entails stigmatizing consequences." *Am. C.L. Union of Nev. v. Masto*, 670 F.3d 1046, 1059 (9th Cir. 2012). Thus, the Court will not consider these authorities.

[5] Senate Bills 1236 and 1404 add certain level one sex offenders convicted of a dangerous crime against children to the class subject to internet publication and community notification. *See* S.B. 1236 § 1; S.B. 1404 § 3. Level two, level three, and some level one sex offenders were already subject to publication and community notification requirements under the old scheme. *See* A.R.S. § 13-3827 (2021); A.R.S. § 13-3825(C)-(D) (2017). Thus, the only offenders added by Senate Bills 1236 and 1404 are those with a level one classification who were previously excluded from publication and community notification but now qualify based on their prior conviction being a dangerous crime against children.

- 7 -

requirement" at issue. *See Juv. Male*, 670 F.3d at 1014. Plaintiffs already had a procedurally safeguarded opportunity to contest their prior convictions during their criminal prosecutions. *See Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 7 (2003). This means the due process analysis views their convictions as proven facts that cannot be disproven at a later hearing. *See Masto*, 670 F.3d at 1059. Indeed, if Plaintiffs could disprove their convictions here, their due process claims would act as an end-around to challenging the underlying conviction itself. *See Juv. Male*, 670 F.3d at 1014 ("[B]ecause defendants are not challenging whether they received adequate due process in their juvenile proceedings, there is no basis for a procedural due process claim."). The Court finds there is no factual dispute about Plaintiffs' prior convictions that a new hearing could resolve. *Masto*, 670 F.3d at 1059. Based on the facts previously proven through the judicial process, Plaintiffs received constitutionally sufficient procedures to support any interference caused by Senate Bills 1236 and 1404. *See Juv. Male*, 670 F.3d 1013.

Plaintiffs argue a hearing is necessary still because they have not "had any opportunity to contest their alleged dangerousness, which has always been the basis for community notification and online publication in Arizona." (Doc. 157 at 7-8.) This argument relates to A.R.S. § 13-3825(A) and the requirement for local law enforcement to classify sex offenders as one of three levels based on their risk of recidivism—level one being the lowest risk of reoffending and level three being the highest. (Doc. 82 ¶ 102, ¶ 104, ¶ 107.) Dangerousness, however, has no bearing on the requirements imposed by Senate Bills 1236 and 1404. The new publishing and community notification requirements trigger when an offender is convicted of a dangerous crime against children, not when law enforcement classifies them as a level one offender. S.B. 1236 § 1; S.B. 1404 § 3. Law enforcement classifications are also irrelevant for the new registration requirements, which only trigger when an offender is convicted of a crime listed in A.R.S. § 13-3821(A). S.B. 1404 § 1. Allowing Plaintiffs to challenge their dangerousness level would be a "bootless exercise." *See Conn. Dep't of Pub. Safety*, 538 U.S. at 8. Such a hearing would not change the applicability of Senate Bills 1236 and 1404.

Plaintiffs also argue for a hearing because they "had no opportunity to make [an] informed decision[] regarding whether to accept [their] plea agreements" considering the new requirements. (Doc. 157 at 9.) Again, Plaintiffs cannot utilize a procedural due process claim as an end-around to challenging their underlying conviction or plea agreement. *See Juv. Male*, 670 F.3d at 1014. The Court finds Counts 1-2 and 4 fail to state a procedural due process claim.

**2.    Counts 1-2 and 4: Substantive Due Process**

The First Amended Complaint makes generalized allegations implicating substantive due process. (*See* Doc. 82 ¶ 167, ¶ 180, ¶ 206.) Defendants' motion to dismiss addresses those allegations, arguing Plaintiffs failed to allege Senate Bills 1236 and 1404 abridge a fundamental right. (*See* Doc. 148 at 10.) Plaintiffs' opposition briefing does not engage Defendants' arguments or suggest substantive due process applies. The Court thus finds Plaintiffs have abandoned any substantive due process claim contained in Counts 1-2 and 4. *Walsh v. Nev. Dep't of Hum. Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006).

Plaintiffs have failed to state a procedural due process claim. To the extent they raise substantive due process claims, those claims have been abandoned. The Court will dismiss Counts 1-2 at 4 for failure to state a claim.

**3.    Counts 3 and 9: Right to Privacy**

The fourth Plaintiff in this lawsuit—the minor child of a level one sex offender—argues Senate Bill 1404 violates their right to privacy under the Fourteenth Amendment and Arizona Constitution. (Doc. 82 ¶¶ 201-02, ¶ 290.) Minor Plaintiff contends Senate Bill 1404 violates their privacy interests by requiring their parents to disclose name and enrollment information to local county sheriffs. (*Id.* ¶ 193, ¶ 195.)

The Fourteenth Amendment "recognizes a right to informational privacy." *Endy v. County of Los Angeles*, 975 F.3d 757, 768 (9th Cir. 2020) (quoting *In re Crawford*, 194 F.3d 954, 958 (9th Cir. 1999)). This stems from an individual's interest in avoiding the disclosure of personal matters. *Id.*

Senate Bill 1404 requires sex offenders provide their children's name and enrollment information to local county sheriffs. S.B. 1404 § 3. Once provided, county sheriffs pass the information to local law enforcement. *See* A.R.S. § 13-3823 ("Except for use by law enforcement officers and for dissemination as provided in [A.R.S.] § 41-1750, a statement . . . required by this article shall not be made available to any person."); *see also* A.R.S. § 41-1750 (listing instances where information can be disclosed). Local law enforcement then adds the children's school to the list of entities receiving community notification—assuming the school was not already on the list as an "area school." *See* S.B. 1404 § 3; A.R.S. § 13-3825(C)(1). Community notification does not include any information about the children. The school only receives a non-electronic copy of "the offender's photograph and exact address and a summary of the offender's status and criminal background." A.R.S. § 13-3825(C)(1).

The Fourteenth Amendment only protects "highly sensitive personal information" like medical records, "medical diagnoses, reports of abuse, substance-abuse treatment records, and the like." *Doe v. Bonta*, 101 F.4th 633, 637 (9th Cir. 2024) (quoting *A.C. ex rel. Park v. Cortez*, 34 F.4th 783, 787-88 (9th Cir. 2022)). It does not protect generic information like an individual's name, age, past employment, and criminal history. *Id.* Name and enrollment information is best classified as generic in nature—it is not akin to medical records or other highly sensitive matters. *See Russell v. Gregoire*, 124 F.3d 1079, 1094 (9th Cir. 1997) (finding the general vicinity of an individual's residence and their current employer is not highly sensitive information). The Court finds the Fourteenth Amendment does not protect the information exchanged under Senate Bill 1404.

Moreover, information collected in a government database does not violate the right to privacy. *See Endy*, 975 F.3d at 769. Information exchanged between government agencies also does not constitute a public dissemination or disclosure. *See id.* Senate Bill 1404 requires county sheriffs collect name and enrollment information to share with local law enforcement. *See* S.B. 1404 § 3. Local law enforcement only uses the information to determine what entities need to receive community notification; the information itself is

not publicly revealed. *See* A.R.S. § 13-3823. The Court finds this scheme does not create a privacy issue under the Fourteenth Amendment. Information privately held by the government does not amount to a disclosure of personal matters. *See Endy*, 975 F.3d at 769.

Minor Plaintiff also challenges Senate Bill 1404 under the Arizona Constitution's Private Affairs Clause, Ariz. Const. art. II, § 8. (Doc. 82 ¶ 290.) In *State v. Mixon*, the Arizona Supreme Court held the Private Affairs Clause does not depart from federal law except in cases involving warrantless home entries. 250 Ariz. 282, 290 (2021). This is not an instance where Arizona grants greater rights than its federal counterpart. *Id.* Same as the Fourteenth Amendment, Senate Bill 1404 does not violate the privacy interests of Minor Plaintiff under the Arizona Constitution.

The Court will dismiss Counts 3 and 9 for failure to state a claim.

### 4. Count 5: Vagueness and Overbreadth

Arizona Revised Statutes § 13-3825(C) states local law enforcement must disseminate sex offender information to "the surrounding neighborhood, area schools, appropriate community groups and prospective employers." Plaintiffs allege the terms "appropriate community groups" and "prospective employers" are unconstitutionally vague and overbroad. (Doc. 82 ¶ 218.)

The Due Process Clause of the Fourteenth Amendment prohibits vague laws. *See United States v. Williams*, 553 U.S. 285, 304 (2008); *see also* Carissa Byrne Hessick, *Vagueness Principles*, 48 Ariz. St. L.J. 1137, 1140-41 (2016) (discussing the intersection of insufficiently precise language and the due process clauses). Vagueness occurs when a criminal statute fails to define an offense "with sufficient definiteness so that ordinary people can understand what conduct is prohibited." *Beckles v. United States*, 580 U.S. 256, 262 (2017).

The challenged terms do not impose a criminal offense on sex offenders. They instead direct where law enforcement should disseminate information as part of their community notification requirements. The Court finds the void-for-vagueness doctrine

does not apply. *See id.* at 262. Regardless of how local law enforcement defines the terms, Plaintiffs are not at risk of unforeseeable government regulation. *See Knox v. Brnovich*, 907 F.3d 1167, 1182 (9th Cir. 2018) (explaining the challenged phrases must put a plaintiff at risk of adverse government action).

The First Amended Complaint makes a generalized allegation implicating an overbreadth challenge. (*See* Doc. 82 ¶ 224 ("These terms are so broad as to allow and encourage arbitrary interpretation and enforcement.")) Defendants' motion to dismiss challenged that allegation, arguing an overbreadth challenge cannot survive outside the confines of the First Amendment. (Doc. 148 at 14); *see also United States v. Salerno*, 481 U.S. 739, 745 (1987). Plaintiffs' opposition briefing does not address Defendants' argument. The Court, thus, finds Plaintiffs have abandoned any overbreadth claim contained in Count 5. *Walsh*, 471 F.3d at 1037.

The Court will dismiss Count 5 for failure to state a claim.

### 5. Count 6: Equal Protection

Plaintiffs allege Senate Bills 1236 and 1404 deprive them of equal protection under the law, in violation of the Fourteenth Amendment, because they are treated differently than other level one sex offenders who did not commit a dangerous crime against children. (Doc. 82 ¶ 234.)

"The Equal Protection Clause prohibits a state from 'deny[ing] to any person within its jurisdiction the equal protection of the laws.'" *Olson v. California*, 104 F.4th 66, 76 (9th Cir. 2024) (quoting U.S. Const. amend. XIV, § 1). An equal protection claim carries the threshold question of the appropriate standard of review. *See id.* at 76-77. Sex offenders are not a protected class. *United States v. LeMay*, 260 F.3d 1018, 1030 (9th Cir. 2001). Offender classifications based on criminal history are not suspect classifications. *Benson v. Ariz. State Bd. of Dental Exam'r*, 673 F.2d 272, 277 n.15 (9th Cir. 1982) (explaining suspect classifications involve distinctions based on immutable characteristics like race and nationality, while quasi-suspect classifications involve distinctions based on gender). And sex offenders "do not have a fundamental right to be free from registration and notification

requirements." *Doe v. Tandeske*, 361 F.3d 594, 597 (9th Cir. 2004). Thus, the appropriate standard of review is rational basis. *See Juv. Male*, 670 F.3d at 1009.

Rational basis review "carries with it the presumption of rationality," and a court must uphold a challenged law if "the legislative means are rationally related to a legitimate governmental purpose." *Olson*, 104 F.4th at 76-77 (quoting *Hodel v. Indiana*, 452 U.S. 314, 331 (1981)). For equal protection claims, rational basis review requires a plaintiff to first show "that a class that is similarly situated has been treated disparately." *See id.* at 77 (quoting *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1063 (9th Cir. 2014)). Next, a plaintiff must negate every conceivable basis that might support the disparate treatment. *See id.* (citation omitted).

Plaintiffs allege Senate Bills 1236 and 1404 treat them differently than similarly situated level one offenders who did not commit a dangerous crime against children. (Doc. 82 ¶ 234.) The Court recognizes this is a close question—one made difficult by Plaintiffs' hardly explaining, in the First Amended Complaint and in their opposition briefing, why they are similarly situated to the comparative group. *See Skinner v. Okla. ex rel. Williamson*, 316 U.S. 535, 541 (1942) (stating equal protection problems can arise when different legal consequences occur against groups that have committed "intrinsically the same quality of offense"); *see also Doe v. Settle*, 24 F.4th 932, 940-41 (4th Cir. 2022) (explaining a detailed analysis is needed to determine whether two offenders are similarly situated based on different convictions). Nonetheless, the Court will presume they have shown disparate treatment and resolve their claim at the next step. *See Olson*, 104 F.4th at 77 (presuming disparate treatment and affirming dismissal under rational basis review).

To survive rational basis review, the decision to treat level one offenders differently from others, based on their underlying conviction, must be "rationally related to a legitimate government interest." *United States v. Navarro*, 800 F.3d 1104, 1113 (9th Cir. 2015). This standard is exceedingly deferential. *See F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 314-15 (1993). Plaintiffs must negate every conceivable basis that might support the disparate treatment. *Id.* at 315. The Court may draw conclusions about the Arizona

Legislature's motivation in enacting the challenged legislation. *See id.* ("[L]egislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data.").

Sex offender registration and notification laws are generally considered rationally connected to the legitimate government interest of "public safety, which [the laws] advance by alerting the public to the risk of sex offenders in their community." *Smith v. Doe*, 538 U.S. 84, 102-03 (2003) (citation omitted); *see also Clark v. Ryan*, 836 F.3d 1013, 1018 (9th Cir. 2016) (finding Arizona's sex offender scheme "clearly has a legitimate nonpunitive purpose of public safety"). Senate Bills 1236 and 1404 advance this interest by providing the public with more information about sex offenders who previously targeted children under the age of fifteen. A.R.S. § 13-705(T)(1) (defining "dangerous crimes against children" as crimes occurring against children under fifteen). Considering "the risk of recidivism posed by sex offenders is 'frightening and high,'" it is reasonable to conclude the Arizona Legislature decided the public would benefit from more information being published. *See Smith*, 538 U.S. at 103 (quoting *McKune v. Lile*, 536 U.S. 24, 34 (2002)). As an example, more information allows parents to better regulate their children's interactions and exposure to offenders. *Beach Commc'ns, Inc.*, 508 U.S. at 315 (explaining court can speculate during rational basis review). The Court finds Senate Bills 1236 and 1404 satisfy rational basis review.

Plaintiffs further challenge Senate Bills 1236 and 1404 under "the Equal Privileges Clause of Article 2, § 13 of the Arizona" Constitution. (Doc. 82 ¶ 245.) "The equal protection clauses of the [Fourteenth] Amendment and the state constitution have, for all practical purposes, the same effect." *Valley Nat'l Bank of Phx. v. Glover*, 62 Ariz. 538, 554 (1945). For the same reasons discussed above, the Court finds that Senate Bills 1236 and 1404 satisfy the Arizona Constitution. *See id.*

The Court will dismiss Count 6 for failure to state a claim.

### 6. Counts 7 and 8: Compelled Speech

Plaintiffs allege Senate Bills 1236 and 1404 violate the First Amendment and the free speech provision of the Arizona Constitution by compelling two types of speech. (Doc. 82 ¶ 253, ¶¶ 256-57, ¶ 264, ¶ 273.) First, Plaintiffs allege the changes to online publication and community notification brand them as dangerous sex offenders by the government. (*See id.* ¶ 249, ¶ 258.) Second, they allege the changes to offender registration compel the disclosure of "information regarding their minor children." (*Id.* ¶ 274.)

#### i. First Amendment

The First Amendment "includes both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977). That later right—the right to refrain from speaking—implicates the compelled speech doctrine. *See* Eugene Volokh, *The Law of Compelled Speech*, 97 Tex. L. Rev. 355, 358 (2018).

##### a. Online Publication and Community Notification

At the preliminary injunction stage, the Court concluded strict scrutiny applied to Plaintiffs' compelled speech claims. (Doc. 132 at 26.) The Court reasoned the First Amendment generally "prohibits the government from telling people what they must say." *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 213 (2013) (citation omitted). And compelling offenders to provide certain information solely for government broadcasting creates mandated speech. The United States Supreme Court has previously held that government mandates are content-based regulations subject to strict scrutiny. *See Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 795 (1988) (applying strict scrutiny to a statute mandating that professional fundraisers disclose "the percentage of charitable contributions collected during the previous 12 months that were actually turned over to charity"). The Court primarily relied on *Riley* to reach this conclusion. (Doc. 132 at 26.) So too here, the Court relies on *Riley* and applies strict scrutiny to decide Plaintiffs' challenge to the online publication and community notification changes.[6]

---

[6] Defendants maintain, as they did at the preliminary injunction stage, that intermediate scrutiny should apply. (Doc. 148 at 16 n.7.) They rely on *Doe v. Harris*, 772 F.3d 563, 576 (9th Cir. 2014), to support their argument. (*Id.*) The Court acknowledges *Harris* applied intermediate scrutiny when analyzing a statute that required offenders to provide internet

To satisfy strict scrutiny, a law must be narrowly tailored to serve a compelling state interest. *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015). The government has a compelling interest in public safety and crime prevention. *See Salerno*, 481 U.S. at 749-50 (citing *De Veau v. Braisted*, 363 U.S. 144, 155 (1960)). Senate Bills 1236 and 1404 advance those interests by altering the public to the dangers of sex offenders in their communities. *See id.*; *Smith*, 538 U.S. at 103 (explaining sex offenders have a high risk of recidivism).

Strict scrutiny next requires narrow tailoring, which means there must be sufficient calibration between the law itself and Arizona's compelling interest in public safety. *See Twitter, Inc. v. Garland*, 61 F.4th 686, 699 (9th Cir. 2023).

Arizona compels offenders to provide information that is then disclosed through Arizona's sex offender website, administered by the Arizona Department of Public Safety, and the community notification process, run by local law enforcement. A.R.S. §§ 13-3825(D), 13-3827(A). Senate Bills 1236 and 1404 do not change this state-run disclosure process. *See* S.B. 1236 § 1; S.B. 1404 § 3. They instead only impact the information collected and posted by law enforcement. *See id.*

In *Riley*, the Supreme Court explained a state can satisfy the narrow tailoring requirement by itself publishing information it compels citizens to disclose. 487 U.S. at 800. The Court explained such a "procedure would communicate the desired information to the public without burdening a speaker with unwanted speech." *Id.* Indeed, the Kansas District Court applied this logic when it rejected a similar challenge to the federal Sex Offender Registration and Notification Act, commonly known as "SORNA." *United States v. Fox*, 286 F. Supp. 3d 1219, 1224 (D. Kan. 2018) ("Here, SORNA operates precisely as *Riley* suggested. SORNA requires convicted sex offenders to disclose information to states

---

service providers and online identifiers to the government. That statute, however, did not require the government to publicly disseminate the information it collected—differentiating *Harris* from Arizona's sex offender scheme and its requirement to publicly disclose certain compelled information. *Id.* at 568 (stating internet information is only made available to the Department of Justice). Another distinction is that the plaintiffs in *Doe v. Harris*, unlike here, argued that disclosing their internet service providers and screen names to authorities would chill speech protected by the First Amendment. *Id.* at 569.

- 16 -

who, in turn, publish that information in a database. It does not require sex offenders to declare their status to every person they meet."). The Court will follow that approach.

The Court finds Arizona's online publication and community notification schemes are narrowly tailored because Arizona itself publishes information compelled from sex offenders. *See id.* Senate Bills 1236 and 1404 do not change this disclosure process. *See* S.B. 1236 § 1; S.B. 1404 § 3. Thus, the Court also finds the changes to publication and notification promulgated by both bills are narrowly tailored, meaning the changes satisfy strict scrutiny and do not violate the First Amendment.

Plaintiffs argue the changes violate the First Amendment by branding them as dangerous sex offenders and giving them no ability to disavow that label. (*See* Doc. 157 at 13.) They rely on *Doe 1 v. Marshall*, 367 F. Supp. 3d 1310 (M.D. Ala. 2019), to support this argument. But in *Doe 1*, the challenged law required offenders have driver's licenses with the designation "CRIMINAL SEX OFFENDER" in bold, red lettering. *Id.* at 1318. The First Amendment violation arose from offenders being forced to carry that designation on their state-issued ID, which made the designation government speech offenders always had to carry. *See id.* at 1325. Here, Senate Bills 1236 and 1404 do not require Plaintiffs to carry any sort of government speech like what was invalidated in *Doe 1*.

### b. Offender Registration Relating to Minor Children

Plaintiff John Doe II, who is the parent of Minor Plaintiff, challenges Senate Bill 1404's requirement for sex offenders to provide information about their minor children to local county sheriffs. (Doc. 82 ¶¶ 273-74.) Plaintiff argues mandating the reporting of a sex offender's child's name and enrollment information to the local county sheriff, which ensures community notification information goes to the minor child's school, constitutes compelled speech violating the First Amendment.

As discussed above, strict scrutiny applies to sex offender registration schemes, and Arizona has a compelling interest in public safety and crime prevent. Normally, registration schemes advance those interests by compelling information about offenders and their prior convictions. *See, e.g.*, *Fox*, 286 F. Supp. 3d at 1223 n.3 ("SORNA merely requires Mr. Fox

to provide factual information about himself and the record of his conviction.") Requiring such information satisfies the narrow tailoring requirement because "[t]he only speech compelled . . . is facts that provide the public and state law enforcement officials with the necessary information" to effectively track and identify sex offenders. *See id.* at 1224; *see also State v. Trujillo*, 248 Ariz. 472, 478 (2020) ("We agree with [the] conclusion that Arizona's registration statutes provide law enforcement with a valuable tool in locating sex offenders by giving them a current record of the identity and location of such offenders.").

Senate Bill 1404 deviates from this approach by compelling offenders to provide information not only about themselves but also their children. Enrollment information could advance public safety by providing law enforcement with another location an offender frequents. *See Fox*, 286 F. Supp. 3d at 1224 ("The identifying information that SORNA requires sex offenders to provide enables law enforcement to locate the offender, *i.e.*, name and social security number, certain addresses they frequent, and international travel plans."). But Defendants do not explain how adding this additional requirement is narrowly tailored to achieve Arizona's compelling interest in public safety and crime prevention.[7] Defendants further do not explain how providing a child's name helps achieve those interests. For the purposes of this motion to dismiss, the Court finds that Plaintiff has stated a First Amendment claim for compelled speech. Construing all factual allegations in the light most favorable to Plaintiff, the First Amended Complaint plausibly alleges the changes to offender registration are not narrowly tailored.

### ii.   Arizona Constitution

Plaintiffs also allege that Senate Bills 1236 and 1404 violate the free speech provision of the Arizona Constitution, Article 2, § 6. (Doc. 82 ¶ 245, ¶ 264.) The Arizona

---

[7] At the preliminary injunction stage, the Court concluded that the compelled speech doctrine requires the necessary predicate of a publicized message. (Doc. 132 at 28.) Defendants rely on this conclusion to argue Plaintiff having to turn over Minor Plaintiff's name and enrollment information is not compelled speech. (Doc. 148 at 17.) The Court, however, now concludes its reliance on *United States v. Arnold*, 740 F.3d 1032 (5th Cir. 2014), was misplaced because *Arnold* did not consider *Riley* or apply strict scrutiny. Similar to *Fox*, Defendants must demonstrate Senate Bill 1404's changes to offender registration are narrowly tailored. 286 F. Supp. 3d at 1223. They can do so at summary judgment.

Constitution provides broader speech protections than the First Amendment. *Brush & Nib Studios, LC v. City of Phoenix*, 247 Ariz. 269, 281 (2019). But Plaintiffs' First Amended Complaint does not distinguish the two bodies of law. Plaintiffs further do not provide any arguments addressing the Arizona Constitution in their opposition briefing. Thus, the Court finds Senate Bills 1236 and 1404 do not violate the Arizona Constitution.

The Court will dismiss Count 7 for failure to state a claim. Defendants' request to dismiss Count 8 is denied.

### 7. Count 13: False Light Invasion of Privacy

Plaintiffs contend that publishing their information on Arizona's sex offender website and disseminating their information to the local community violates Arizona's common law protection against false light invasion of privacy. (*See* Doc. 82 ¶ 331.) To state a claim for false light invasion of privacy, Plaintiffs must allege well-pleaded facts that satisfy the following legal test:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
>
> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
>
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

Restatement (Second) of Torts § 652E (1977) (adopted by *Godbehere v. Phx. Newspapers, Inc.*, 162 Ariz. 335, 342 (1989)).

Plaintiffs allege online publication and community notification create the false impression they are a threat to the community. (Doc. 82 ¶¶ 324-25.) They further allege that Defendants know such an impression is false because they classified Plaintiffs as level one offenders—the lowest risk of reoffending. *See* A.R.S. § 13-3825(A).

"[P]rivacy rights are absent or limited . . . where the information would be of public benefit." *Godbehere*, 162 Ariz. at 789. Arizona's sex offender publication and notification scheme "makes offender information accessible to the public so that they can take the

precautions they deem necessary for their own safety." *Trujillo*, 248 Ariz. at 483 (internal quotation marks omitted). From this, Plaintiffs cannot pursue a false light invasion of privacy claim based on the publication of their information and criminal history. *See Godbehere*, 162 Ariz. at 789. What is more, Plaintiffs' alleged injury rests on the public presuming they are a threat to the community. (Doc. 82 ¶ 324). Reputational injuries are not protected through a false light invasion of privacy claim, and the truthful presentation of information only creates a claim when the presentation is made in a "highly offensive way" to create the false impression. *See Reynolds v. Reynolds*, 231 Ariz. 313, 318 (App. 2013). Nothing about Arizona's scheme meets this high bar. The Court finds Plaintiffs have failed to state a claim for false light invasion of privacy.

The Court will dismiss Count 13 for failure to state claim.

## IV.    CONCLUSION

For the reasons stated herein,

**IT IS ORDERED** granting in part Defendants' motion to dismiss (Doc. 148). The following Counts are dismissed: Counts 1, 2, 3, 4, 5, 6, 7, 9, and 13. The motion is denied with respect to Count 8.

**IT IS FURTHER ORDERED** setting a Rule 16 Scheduling Conference by separate order.

Dated this 7th day of July, 2025.

Michael T. Liburdi
United States District Judge