**DUMOND LAW FIRM, PLLC**
Samantha K. DuMond, Esq. No. 031072
340 East Palm Lane, Suite A100
Phoenix, AZ 85004
Phone: (602) 803-4975
Facsimile: (602) 680-3330
Samantha@DuMondLawAZ.com

**HERALD PRICE FAHRINGER, PLLC**
**d/b/a FAHRINGER & DUBNO**
Erica T. Dubno, Esq. No. 037310
43 West 43rd Street, Suite 261
New York, NY 10036
Telephone: (212) 319-5351
Facsimile: (212) 319-6657
Erica.Dubno@fahringerlaw.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jane Doe, et al., | No. CV-24-02259-PHX-MTL |
| Plaintiffs, | |
| vs. | **PLAINTIFF'S RESPONSE TO COL. JEFFREY GLOVER'S MOTION FOR JUDGMENT ON THE PLEADINGS, IN PART** |
| Col. Jeffrey Glover, et al., | |
| Defendants. | (Hon. Michael T. Liburdi) |

Plaintiffs Jane Doe, John Doe I, John Doe II, and Minor Doe, by and through undersigned counsel, submit their Response objecting to *Col. Jeffrey Glover's Motion for Judgment on the Pleadings, In Part* (Doc. 243).

## I. LEGAL STANDARD

In considering a motion for Judgment on the Pleadings under Rule 12(c), courts must accept the allegations of the non-moving party as true and construe the pleading in the light most favorable to the plaintiff. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). For dismissal on the pleadings to be granted "it must appear to a *certainty* that the

1

plaintiff would not be entitled to relief under any set of facts that could be proved." *W. Rsrv. Oil & Gas Co. v. New,* 765 F.2d 1428, 1430, (9th Cir. 1985) (emphasis added). This is a high bar, as the existence of any material issue of fact that could establish the claim is fatal to dismissal. Even if material issues of fact appear to be resolved with the pleadings, dismissal without prejudice is still dissuaded to permit plaintiffs the opportunity to be heard in court, as the Federal Rules and notions of equity support further amendment rather than outright dismissal. *See Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 701 (9th Cir. 1988) ("The standard for granting leave is generous."); Fed. R. Civ. P. 15(a).

## II. ARGUMENT

### a. Plaintiffs' Eighth Amendment Claim is Meritorious and Does Not Fail as a Matter of Law

The Community Notification and Online Publication requirements imposed by S.B. 1404 and S.B. 1236 on Level One registrants, such as the adult Plaintiffs here, violate the Eighth Amendment's protection against cruel and unusual punishment. They are excessive and serve no valid legislative purpose. They impose an unnecessary permanent affirmative disability and restraint on registrants affecting virtually every aspect of their lives, and subject them and their families to real danger. The Second Amended Complaint ("Complaint") establishes that notifying the community of a registrant's status as a sex offender often results in harassment, job loss, forced residential moves, and vigilantism. Doc. 241 ¶¶ 146, 148, 301, 303.

This cruel punishment serves no valid legislative purpose because the challenged provisions were intended to punish individuals already convicted of offenses statutorily

2

enumerated as "Dangerous Crimes Against Children," rather than protecting the public from any actual enhanced risk. This is evidenced, in part, by concessions of the sponsor of S.B. 1404 and S.B. 1236 that the goal was to be a "living nightmare for sex offenders."[1] Doc. 241 ¶ 170. Even if the intent was regulatory instead of punitive, which is disputed, the actual effects of the challenged amendments constitute cruel and unusual punishment. Doc. 241 ¶¶ 155, 171.

Defendant Glover urges the challenged amendments are not "inherently barbaric." Doc. 243 at 6-7. While Plaintiffs believe the excessive punishment imposed by these wholly unnecessary laws is barbaric, the gravamen of their Eighth Amendment claim is based on the concept of proportionality. This right "flows from the basic precept of justice that punishment for crime should be graduated and proportioned to both the offender and the offense." *Miller v. Alabama*, 567 U.S. 460, 469 (2012).

Defendant claims the offenses Plaintiffs were convicted of are "very serious crimes" and "statutorily classified as dangerous crime against children under A.R.S. § 13-705." Doc. 243 at 8. However, as spelled out in the Complaint, which must be accepted as true, each Plaintiff was expressly found by a judge to *not* be a "dangerous offender" under A.R.S. § 13-704. Doc. 241 ¶¶ 17, 32, 46, 97. Moreover, an offense is not inherently dangerous or serious merely because it is enumerated in § 13-705. Those offenses are statutorily labeled as a "dangerous crime" based solely on the age of the minor involved (under 15 years old) – *not* because the actual offense or offender poses any *future* risk.

---

[1] https://www.azsenaterepublicans.gov/post/senator-shamp-champions-legislation-to-protect-arizona-s-children

Level One registrants, by definition, pose the lowest risk to reoffend or any danger to the community. Doc. 241 ¶ 104. Under Arizona's tiered registration system, the offense of conviction is just one of many factors used in determining the actual risk posed by a specific registrant. Doc. 241 ¶ 102. Nevertheless, the challenged amendments subject low risk offenders, such as Plaintiffs, to permanent ostracism and isolation through online publication and community notification based purely on the offense of conviction – regardless of when it occurred or what their conduct entailed. Doc. 241 ¶ 146.

The challenged amendments ignore the careful consideration given to each registrant by the State-mandated individual assessments. Doc. 241 ¶ 167. This draconian approach completely disregards critical factors (included in the assessments) that actually relate to recidivism and possible future harm. These factors include prior criminal history, number of convictions, age of the offender, relationship to the minor, whether threats or weapons were involved, alcohol and drug use, and perhaps most importantly, steps taken by the registrant towards rehabilitation and treatment. Doc. 241 ¶ 155.

Defendant claims the new Community Notification and Online Publication requirements "do not prohibit Plaintiffs from holding particular jobs" and "do not limit where Plaintiffs can go or what they can do." Doc. 243 at 8. However, this overlooks the allegations in the Complaint, which must be accepted as true at this point, establishing that permanently including low risk offenders on the public registry, prevents them from ever being fully reintegrated into society. Doc. 241 ¶¶ 300-301. And, at trial Plaintiffs can establish that offense-based public registries can *increase* recidivism because they make it harder for registrants to get jobs, find housing, and maintain healthy relationships. Doc.

241 ¶¶ 131, 172. The record includes reference to empirical research and expert analysis which addresses recidivism rates and the effectiveness of registration and reporting regimes, raising substantial questions as to whether the amended requirements meaningfully advance the State's asserted regulatory purpose. Doc. 241 ¶¶ 180-181.

Viewing the facts in the light most favorable to Plaintiffs, the Complaint establishes that they are Level One registrants, and each has been assessed to present the lowest possible risk to the community. Nevertheless, Jane Doe, John Doe I, and John Doe II must have personal information exposed and published on the registry for the rest of their lives. Doc. 241 ¶¶ 149, 193. Mandating that minimal risk registrants must have their registrant status published on the registry does nothing to engender public safety, which is a "most significant factor" when assessing the punitive impact of a statute. *See Smith v. Doe I*, 538 U.S. 84, 102-03 (2003).

The legislative discussion regarding the purpose of the challenged legislation was focused on revulsion towards registrants, rather than how condemning low risk registrants to a lifetime of ostracism – and disincentivizing individuals from undergoing treatment -- makes communities safer. In introducing the S.B. 1236, the sponsor, Senator Shamp, declared it "shocking" that level ones were not registered on the website, going further to say that the discovery of this fact caused her to feel sick to her stomach.[2] The bill was introduced due to the particularly strong disgust the Senator felt towards registrants. Before voting on S.B. 1236, legislators were scared into believing that "Tier 3" registrants

---

[2] https://www.azleg.gov/videoplayer/?eventID=2024021027 at 59:55.

5

under SORNA can be deemed as Level One registrants in Arizona.[3] Such an accusation falsely paints all registrants as permanent imminent threats of imposing repeated, reprehensible harm to the community. However, this overlooks the reality that registrants in Arizona are given individual assessments regarding their true potential for future harm. Doc. 241 ¶ 173.

The strong rhetoric utilized by policy makers, in tandem with a general disdain towards registrants, is exhaustively cited as the very justification for these bills. All registrants (regardless of their individual traits and conduct) have been routinely labeled the worst of the worst, deemed a danger to the community, and an active danger towards children. Naturally, such a characterization from authority figures foments anger within the populace.

These statements are not made in a vacuum. The insinuation that there are untold scores of individuals prowling the streets to victimize children, in concert with anger fostered by these statements has seeped into modern political discourse. These statements have violent consequences as alleged in the Complaint, which must be accepted as true. *See* Doc. 241 ¶¶150, 155, 301, 307-308.

This leaves Plaintiffs, all of whom have been determined to be minimal risk registrants and not dangerous offenders, stuck in an extremely vulnerable position. On one hand, they are advanced upon by a vitriolic mob which encourages violent retribution over a threat which Plaintiffs do not pose. On the other hand, the ambivalence of the State to

---

[3] https://www.azleg.gov/videoplayer/?eventID=2024031040 at 103:50.

acknowledge these legitimate harms serves as a stonewall, backstopping Plaintiffs from seeking relief from the very entity that should protect them.

Disputes regarding real-world burdens, enforcement practices, and contested assumptions about risk and public safety are material facts, which should be construed from the Complaint in favor of Plaintiffs, not legal abstractions. Such evidence directly bears on whether a law is excessive or rationally connected to its nonpunitive purpose. *See Smith*, 538 U.S. at 97. At minimum, the Complaint presents a triable question as to whether the postconviction reporting amendments increase the punitive effect of Arizona's registration scheme when applied to Plaintiffs.

Defendant cites *United States v. Juv. Male*, 670 F.3d 999, 1010 (9th Cir. 2012), for the claim that "although sex offender registration and publication requirements 'may have the effect of exposing … defendants and their families to potential shame and humiliation,' they do not 'meet the high standard of cruel and unusual punishment.'" Doc. 243 at 9. There, the Court found that requiring juvenile members of Indian Tribes to register in a database for at least 25 years because they committed the equivalent of aggravated sexual abuse was not disproportionate punishment. 670 F.3d at 1010.

However, the Ninth Circuit did not hold that sex offender registration and publication laws are categorically sacrosanct and outside the ambit of the Eighth Amendment. There the Court was addressing the federal Sex Offender Registration and Notification Act ("SORNA"), which expressly allows for lowest level registrants, such as Plaintiffs, to get off the registry after at most 15 years and provides a mechanism for early release from the registry after 10 years with a clean record and sex offender treatment. 34

U.S.C. § 20915. Additionally, the Court noted that those registrants did not face any "threat of physical harm." *Id.* Here, the Complaint, which must be taken as true, alleges that registrants do face threats of harm. Doc. 241 ¶¶ 300-309. At trial Plaintiffs can establish that registrants have been threatened and harmed when their private information was put on a public registry.[4] While the bar for cruel and unusual punishment is high, it is not insurmountable.

Defendant asks this Court to reject a categorical approach, as compared to an as-applied challenge. Doc. 243 at 9. However, that issue relates to the merits rather than the sufficiency of the pleadings, which is at issue here. If this Court does address the merits, it should consider the matter categorically as well. This is, in part, because Arizona's registration scheme requires law enforcement to conduct individualized risk assessments for all registrants, and then completely ignore those assessments and any actual risk posed by low level registrants if the offense they committed – even decades ago – is on a list of "DCAC" offenses. Doc. 241 ¶¶ 102, 167, 173. This is disproportionate and serves no purpose to guard against future risk of harm. Plaintiffs should be able to have their day in court on this important constitutional question.

The challenged notification and publication requirements resemble traditional shaming punishments. They disclose otherwise non-public information including current home addresses. Failure to comply with requirements imposed on registrants can be

---

[4] Very recently someone in Orlando murdered a stranger simply because of his sex offender status. The assailant was only able to locate the victim due to the registry. https://www.fox35orlando.com/news/florida-registered-sex-offender-body-identified-suitcase-abandoned-palm-bay-compound.

punished by imprisonment. The challenged provisions are retributive in that they only look back at the statutory offense (i.e., whether it is on a list of "DCAC" offenses) rather than at the actual conduct, assessed risk level, or any other considerations. They are cruel and unusual because they mark registrants convicted of DCAC offenses (regardless of when they occurred, how they occurred, and extensive steps toward rehabilitation) as individuals who can never fully be admitted back into the community. And even though the alleged purpose is to deter recidivism or keep the community safer, it does not serve either of those purposes.

The Eighth Amendment draws its meaning from the "evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, 101 (1958). The question here is not whether earlier registration schemes once survived constitutional scrutiny. Instead, the Court is asked to consider whether Plaintiffs would not be entitled to relief under Count 10 under any set of facts that could be proved when this Complaint is viewed with all inferences in their favor.

b. **Plaintiffs Articulated Cruel and Unusual Punishment in the Second Amended Complaint and Dismissal with Prejudice is Not an Appropriate Remedy**

Contrary to Defendant's contention, Plaintiffs adequately plead their Eighth Amendment claim. The Complaint specifically alleges that registration has been traditionally viewed as punitive in Arizona (Doc. 241 ¶ 300), registration imposes affirmative disabilities which jeopardize liberty and physical safety (Doc. 241 ¶¶ 300-303), the amendments are excessive without any legitimate governmental purpose (Doc. 241 ¶¶ 304-306), and that the amendments are in violation of the Eighth Amendment (Doc. 241 ¶¶ 307-309).

Even if the Complaint currently is not sufficient to support the Eighth Amendment claim, which is disputed, dismissal with prejudice is inappropriate. Leave to amend should be "applied with extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc.,* 244 F.3d 708, 712 (9th Cir.2001), quoting *Morongo Band of Mission Indians v. Rose,* 893 F.2d 1074, 1079 (9th Cir.1990); *see also* Fed. R. Civ. P. 15(a). In determining whether leave to amend is appropriate the Court considers the presence of any of four factors: "bad faith, undue delay, prejudice to the opposing party, and/or futility." 244 F.3d at 712. None of those factors apply here.

There is no evidence that Plaintiffs acted in bad faith. They have been litigating this matter diligently. Any failure to fully develop any claim was inadvertent. There is no undue delay. The parties have been proceeding with discovery, including issues relating to the Eighth Amendment claim. This briefing and any possible further amendment of the Complaint would not impact the Court's scheduling order for discovery or trial. Defendants did not file an amended answer to the recently amended Complaint so there is no prejudice to them or potential for delay. Finally, it would not be futile to allow Plaintiffs to flesh out the specific allegations on this constitutional claim.

Defendant points to a meet-and-confer held between counsel to claim amendment would be futile. *See* Doc. 243 at 3; Doc. 207 at 2-3, 6. To the best of counsel's recollection, at that time Defendant raised issues including the belief that Count 10 in general fails as a matter of law because the amendments do not constitute punishment and are not excessive. While it is possible, counsel does not recall Defendants claiming that specific allegations in Count 10 were insufficient. Moreover, futility is determined by the merits of Plaintiffs'

argument. S*ee Polich v. Burlington Northern, Inc.,* 942 F.2d 1467, 1472 (9th Cir. 1991) ("Dismissal without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by any amendment").

Even when adopting Defendant's argument, *in arguendo*, there is no showing why the purported deficiencies in the Complaint cannot be cured by further amendment. While they believe the Complaint is sufficient, given leave Plaintiffs could provide greater specificity and allegations to show that registrants have or will suffer cruel and unusual punishment. Count 10 is not duplicitous to existing claims nor patently frivolous, further underscoring the absence of futility. *See Bonin v. Calderon*, 59 F.3d 815, 846 (9th Cir. 1995). Regardless of Defendant's estimation of the argument, the notion that a complaint is *missing* an element is wholly distinct from the assertion that it *cannot assert* that element.

### c. S.B. 1404 Imposes Punishment of Status on Minor Doe in Violation of the Eighth Amendment

As correctly stated in Defendant's motion (Doc. 243 at 3), Plaintiffs do not oppose this Motion as to Minor Doe because it would be futile in light of findings made in the Court's March 2, 2026 Order denying the proposed bill of attainder claim as to Minor Doe (Doc. 238). However, arguments on this matter are presented here because Defendant addressed the claim on the merits, and to preserve these claims on appeal. *See Grewal v. Choudhury*, 377 F. App'x 617 (9th Cir. 2010) (unpublished) (undeveloped claims which are not supported by argument are deemed abandoned on appeal).

S.B. 1404 represents a legislatively imposed, status-based civil regime that burdens Minor Doe, an innocent child, solely because of their father's conviction which occurred

11

before they were born. It requires mandatory community notification to the school a registrant's child attends. Minor Doe being forced to be publicly associated with the sex offender registry creates an impermissible punishment on a minor who was never convicted of any crime. Despite registry being deemed a civil sanction by Arizona Courts, the appropriate method for an Eighth Amendment analysis is to look beyond the mere label and assess the function of the sanction. *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 165–69 (1963).

The cases relied upon by the State are silent as to the legislature imposing statutorily-based enduring disabilities on a non-offender child. *See Hawkins v. Comparet-Cassani*, 251 F.3d 1230, 1237–39 (9th Cir. 2001); *Whitley v. Albers*, 475 U.S. 312, 318–22 (1986); *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1246–47 (9th Cir. 2016). This absence is crucial, as the possibility of a civil statute being unconstitutionally "punitive in effect" under the Eighth Amendment has not been foreclosed by the Supreme Court. *See Mendoza-Martinez*, 372 U.S. at 165–69. And, punishment of status towards Minor Doe violates both the Eighth Amendment and Article 2, § 15 of the Arizona State Constitution. See *In re C.P.,* 967 N.E.2d 729 (Ohio 2012) (lifelong registration and notification requirements on juvenile sex offenders violate the prohibition against cruel and unusual punishment contained the Eighth Amendment and the State Constitution).

## III.    CONCLUSION

Defendant has not met the high legal standard to secure a judgment on the pleadings as to Count 10. Plaintiffs respectfully request the Court deny the Motion for Judgment on the Pleadings, in Part. In the alternative, Plaintiffs request leave to amend the Complaint

as to Count 10, pursuant to Fed. R. Civ. P. 15(a), and grant such other and further relief as may be just.

RESPECTFULLY SUBMITTED this 14th day of April, 2026.

**DUMOND LAW FIRM, PLLC**
*By /s/ Samantha DuMond*
Samantha K. DuMond
340 East Palm Lane, Suite A100
Phoenix, Arizona 85004
Samantha@DuMondLawAZ.com

**HERALD PRICE FAHRINGER, PLLC**
**d/b/a FAHRINGER & DUBNO**
Erica T. Dubno, Esq. No. 037310
43 West 43rd Street, Suite 261
New York, NY 10036
Erica.Dubno@fahringerlaw.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 14, 2026, I electronically transmitted the attached document to the Clerk's Office using the ECF system for filing.

*/s/ Samantha K. DuMond*
Samantha K. DuMond