WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Jane Doe, et al., | No. CV-24-02259-PHX-MTL |
| Plaintiffs, | **ORDER** |
| v. | |
| Kris Mayes, et al., | |
| Defendants. | |

Before the Court is Defendant Colonel Jeffrey Glover's Motion for Judgment on the Pleadings, In Part. (Doc. 243.) Defendant asks the Court to dismiss Count 10 of Plaintiffs' Second Amended Complaint: cruel and unusual punishment. The Court will grant the Motion in part and deny in part.

## I.    BACKGROUND

In 2024, Arizona enacted Senate Bills 1236 and 1404. 2024 Ariz. Sess. Laws ch. 158 (hereinafter "S.B. 1236"); 2024 Ariz. Sess. Laws ch. 57 (hereinafter "S.B. 1404"). The bills amended Arizona's sex offender registration and notification statutes, imposing new or increased registration, publication, and community notification requirements on Level One sex offenders convicted of dangerous crimes against children ("affected Level One offenders"). *See* A.R.S. § 13-705(T) (defining "dangerous crimes against children"). Specifically, Senate Bill 1236 mandates that personal information about affected Level One offenders be published in a public online registry. S.B. 1236 § 1. In tandem, Senate Bill 1404 requires that personal information about affected Level One offenders be

disseminated in offenders' communities. S.B. 1404 § 3. If an affected Level One offender has legal custody of a minor child, dissemination extends to the child's school. *Id.*

Three of the four Plaintiffs are Level One sex offenders convicted of dangerous crimes against children. (Doc. 241 at 4-8). The fourth Plaintiff is the minor child of an affected Level One offender. (Doc. 241 at 7-9.)

Plaintiffs argue that Senate Bills 1236 and 1404 violate their rights under state and federal law. Count 10 of Plaintiffs' Second Amended Complaint ("SAC") alleges that Senate Bills 1236 and 1404 violate Plaintiffs' and all affected Level One offenders' rights under the Federal and Arizona Constitutions to be free from cruel and unusual punishment. Plaintiffs seek injunctive relief and declaratory judgment. (*Id.* at 52-53.) Defendant Colonel Jeffrey Glover now asks the Court to enter judgment on the pleadings in his favor as to Count 10.

## II.    LEGAL STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure allows a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." "A judgment on the pleadings is properly granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law." *Marshall Naify Revocable Tr. v. United States*, 672 F.3d 620, 623 (9th Cir. 2012) (citation omitted). This standard is "functionally identical" to the standard for deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Gregg v. Haw., Dep't. of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017) (citation omitted). Therefore, in deciding a motion for judgment on the pleadings, the Court must inquire whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility is more than mere possibility; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

**III.    DISCUSSION**

Defendant contends that Count 10 of the SAC should be dismissed because Plaintiffs have not alleged in more than a conclusory manner that Senate Bills 1236 and 1404 impose a "cruel and unusual" form of punishment. Defendant also argues that, even if Plaintiffs have properly alleged cruel and unusual punishment, facts in the SAC foreclose Plaintiffs' claims as a matter of law. The Court agrees that the facts alleged in the SAC establish that the claims of Plaintiffs Jane Doe, John Doe I, and Minor Doe fail as a matter of law. However, the Court concludes that Plaintiff John Doe II's as-applied claim of cruel and unusual punishment may proceed.

The Eighth Amendment provides that "cruel and unusual punishments" shall not be "inflicted." U.S. Const. amend. VIII. This prohibition applies to the States through the Fourteenth Amendment. *Jones v. Mississippi*, 593 U.S. 98, 105 (2021). The Arizona Constitution likewise proscribes the infliction of "cruel and unusual punishment." Ariz. Const. art. II, § 15. The Arizona Constitution's prohibition on cruel and unusual punishment "is identical to and provides no greater protection than its federal counterpart." *State v. Rodriguez*, 260 Ariz. 36, 56 n.15 (Ariz. Ct. App. 2025). Accordingly, the Court will exclusively discuss the Eighth Amendment, keeping in mind that Plaintiffs' federal and state claims of cruel and unusual punishment rise and fall together.

The Eighth Amendment's Cruel and Unusual Punishments Clause prohibits two categories of punishment. The first category embraces "inherently barbaric punishments," *Graham v. Florida*, 560 U.S. 48, 59 (2010), such as "disemboweling, quartering, public dissection, and burning alive," that have long fallen out of use, *City of Grants Pass, Or. v. Johnson*, 603 U.S. 520, 541 (2024) (citation omitted). The second category comprises punishments that are disproportionate to the crime. *Graham*, 560 U.S. at 59. "Embodied in the Constitution's ban on cruel and unusual punishments is the precept of justice that punishment for crime should be graduated and proportioned to the offense." *Id.* (citation modified).

. . . .

- 3 -

### A.    Whether Plaintiffs Allege Cruel and Unusual Punishment

Plaintiffs do not meaningfully pursue a theory under the first category of cruel and unusual punishments. They do not allege that the punishment[1] imposed by Senate Bills 1236 and 1404 is comparable to the types of punishment the Supreme Court has characterized as barbaric—physical acts of "torture," *Bucklew v. Precythe*, 587 U.S. 119, 130-31 (2019), that disregard "the human attributes" of criminal offenders, *Graham*, 560 U.S. at 59. *See also Baze v. Rees*, 553 U.S. 35, 97-98 (2008) (Thomas, J., concurring in the judgment). Nor do they suggest that Senate Bills 1236 and 1404 impose a punishment that has "long fallen out of use." *Bucklew*, 587 U.S. at 130. Though Plaintiffs in their Response to the present Motion assert in passing that the punishment imposed by Senate Bills 1236 and 1404 is "barbaric," (Doc. 250 at 3), the Court need not "accept as true" Plaintiffs' bare legal conclusion, *Twombly*, 550 U.S. at 555 (quoting *Papason v. Allain*, 478 U.S. 265, 286 (1986)). And indeed, Plaintiffs acknowledge that "the gravamen of their Eighth Amendment claim is based on the concept of proportionality." (Doc. 250 at 3.)

The Court disagrees, however, with Defendant's suggestion that Plaintiffs do not allege a disproportionality theory in the SAC at all. When deciding a motion for judgment on the pleadings, a court must construe allegations in the pleadings "in the light most favorable to the nonmoving party." *Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*, 431 F.3d 353, 360 (9th Cir. 2005). The SAC alleges facts about Plaintiffs Jane Doe, John Doe I, and John Doe II that would tend to minimize the gravity of their offenses, such as that each committed his or her offense(s) on a single day, that none of the three were convicted of a dangerous offense as defined by A.R.S. § 13-704, and that none of the three are likely to reoffend. (*See* Doc. 241 at 4-8.) At the same time, the SAC emphasizes the negative repercussions Jane Doe, John Doe I, and John Doe II will face as a result of Senate Bills 1236 and 1404, such as harassment and vigilantism. (*Id.* at 28.) Casting these two sets

---

[1] The Court takes no position on whether the burdens imposed by Senate Bills 1236 and 1404 are, in fact, "punishments" in the constitutional sense. Because Defendant's Motion did not substantively challenge Plaintiffs' characterization of the burdens as punishment—limiting discussion of the issue to a footnote that pointed to the filing of a different defendant—the Court will not consider the question. *See United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020).

of allegations in the light most favorable to Plaintiffs, there is a clear suggestion that Senate Bills 1236 and 1404 impose punishment disproportional to Jane Doe, John Doe I, and John Doe II's crimes. This suggestion need not have been expressed explicitly in order to properly allege unconstitutional disproportionality. *See Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam) ("Federal pleading rules . . . do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted.").

Where the SAC *does* fail to raise a claim of disproportionality is with regard to Minor Doe. [2] As discussed above, a proportionality challenge under the Cruel and Unusual Punishments Clause compares the severity of a punishment to the seriousness of a crime. *Graham*, 560 U.S. at 59. Therefore, to raise such a challenge, it is necessary for a plaintiff to allege that he has been convicted of a crime. This follows from the general principle that the Cruel and Unusual Punishments Clause only protects convicted criminals. *Demery v. Arpaio*, 378 F.3d 1020, 1029 (9th Cir. 2004) ("[T]he Eighth Amendment only prevents the imposition of cruel and unusual punishment on convicted prisoners."); *Hawkins v. Comparet-Cassani*, 251 F.3d 1230, 1238 (9th Cir. 2001) (noting that Cruel and Unusual Punishments Clause claims are for "those convicted of crimes" and that pre-trial detainees therefore cannot be members of a prisoner-wide class pursuing injunctive relief pursuant to the Cruel and Unusual Punishments Clause); *Ingraham v. Wright*, 430 U.S. 651, 664 (1977) (denying the Eighth Amendment's proscription of cruel and unusual punishments applies to corporal punishment at school, because the Cruel and Unusual Punishments Clause "was designed to protect those convicted of crimes"). The SAC states, in no uncertain terms, that Minor Doe has never been convicted of any crime under Arizona's criminal code. (Doc. 241 at 9.) As to Minor Doe, then, there is no allegation—either stated or inferable—that he is suffering a disproportionate punishment in violation of the Eighth Amendment. Minor Doe's claims under Count 10 must be dismissed.

---

[2] Plaintiffs' Response to Defendant's Motion states that Plaintiffs do not oppose entry of judgment on the pleadings as to Minor Doe's claims. (Doc. 250 at 11.) Nonetheless, to preserve Minor Doe's claims on appeal, Minor Doe argues that Senate Bills 1236 and 1404 violate his right to be free from cruel and unusual punishment. (*Id.*)

**B.    Merits of Plaintiffs' Claims**

The Court turns, then, to whether the remaining Plaintiffs' allegations foreclose any claim for relief under a disproportionality theory.

The Cruel and Unusual Punishments Clause's principle of proportionality is a "narrow" one. *Graham*, 560 U.S. at 59-60 (citation omitted). As such, the Eighth Amendment "does not require strict proportionality between crime and sentence," but only bars "extreme sentences that are grossly disproportionate to the crime." *Id.* at 60 (citation omitted). In practice, this means that "it is exceptionally difficult for a criminal to show that his sentence is unconstitutionally disproportionate." *United States v. Williams*, 636 F.3d 1229, 1232 (9th Cir. 2011).

There are two ways to challenge a punishment on proportionality grounds. The first is to raise an as-applied challenge. *United States v. Shill*, 740 F.3d 1347, 1355 (9th Cir. 2014). The second is to bring a categorical challenge. *Id.* As the SAC characterizes Count 10 as raising "a facial and as applied challenge" to Senate Bills 1236 and 1404, (Doc. 241 at 49), the Court will evaluate the merits of each type of challenge in light of the facts alleged in the SAC.

**1.    Plaintiffs' As-Applied Challenge**

When evaluating an as-applied challenge, a court performs a threshold inquiry, "compar[ing] the gravity of the offense [committed] to the severity of the sentence." *Williams*, 636 F.3d at 1232. This threshold inquiry "can consider the penological justifications for the State's sentencing scheme, the offender's mental state and motive in committing the crime, and the actual harm caused to his victim or to society by his conduct, as well as the absolute magnitude of the crime." *Norris v. Morgan*, 622 F.3d 1276, 1290 (9th Cir. 2010) (citation modified). In the "rare case" that the threshold inquiry "leads to an inference of gross disproportionality," a court then compares the offender's sentence with sentences given to other offenders in the same jurisdiction and with sentences imposed for the same crime in other jurisdictions. *Graham*, 560 U.S. at 60 (citation omitted). If the comparison across offenders and jurisdictions confirms the inference of gross

disproportionality, the punishment violates the Eighth Amendment. *Id.*

### a.    Jane Doe

Plaintiff Jane Doe was convicted on two counts of child molestation that occurred on the same day, February 5, 2004. (Doc. 241 at 4.) Jane Doe's conviction involved a minor[3] who was over twelve years old but under fifteen. (*Id.* at 5.) As alleged in the SAC, Jane Doe was not convicted of a "dangerous offense" as defined by Arizona law, (*id.*), meaning that her offenses did not "involv[e] the discharge, use or threatening exhibition of a deadly weapon or dangerous instrument or the intentional or knowing infliction of serious physical injury on another person," A.R.S. § 13-105.[4] The SAC makes no mention of Jane Doe having any other criminal convictions. For the sake of the following analysis, the Court will assume that Jane Doe has no criminal history beyond her convictions for child molestation. These details about Jane Doe's offenses, limited as they might be, are sufficient for the Court to conclude that the punishment imposed by Senate Bills 1236 and 1404 is not grossly disproportionate.

The Court's conclusion is largely dictated by the Ninth Circuit's decision in *Norris v. Morgan*, 622 F.3d 1276 (9th Cir. 2010). In *Norris*, the Ninth Circuit made three points in determining that the plaintiff's sentence of life without parole was not grossly disproportionate to his conviction for one count of child molestation. The first and most basic point was the recognition that "the impact of child molestation on the lives of its victims is extraordinarily severe." *Norris*, 622 F.3d at 1294 (citation modified). As a consequence, even when molestation is, in some sense, nonviolent—the plaintiff in *Norris* touched his victim's privates "over her clothing for at most 'a couple of seconds'"—such an offense is "undisputably" different from the minor property crimes or purely regulatory violations that have been the basis for successful proportionality challenges. *Id.*; *see also United States v. Dowell*, 771 F.3d 162, 169 (4th Cir. 2014) ("We reject out of hand the

---

[3] The SAC is unclear as to whether Jane Doe had one victim or two. (*See* Doc. 241 at 4-5.) Construing allegations in the light most favorable to Jane Doe, the Court will assume, for the purposes of the following, that she had only one victim.

[4] Though it is unclear from the SAC exactly when Jane Doe was convicted, the definition of "dangerous offense" has not changed between 2009, when that definition was first added to Arizona's Criminal Code, and present.

notion that the sexual abuse of a child can be considered nonviolent merely because it does not lead to physical or life-threatening injuries."); *United States v. Raiche*, 50 F.4th 279, 285 (1st Cir. 2022) (same). The second point was that a completed crime is more serious than an attempted one. *Norris*, 622 F.3d at 1293. And the third was that the *Norris* plaintiff was a sex-offense recidivist. *Id.* at 1294.

All but the last of these points apply with equal force to Jane Doe's offenses. Jane Doe's acts of molestation, by their very nature, had an "extraordinarily severe" impact on her victim. The fact that she did not knowingly cause her victim "serious physical injury" or threaten the victim with a dangerous weapon does not make her offenses comparable to any of the minor property crimes or regulatory violations that have been the basis for successful Eighth Amendment challenges. *Cf. Solem v. Helm*, 463 U.S. 277 (1983) (finding life without parole under a recidivist statute unconstitutionally disproportionate where the triggering offense was uttering a $100 "no account" check); *Ramirez v. Castro*, 365 F.3d 755 (9th Cir. 2004) (finding 25-years-to-life sentence under Three Strikes law unconstitutionally disproportionate where final "strike" was the theft of a $199 VCR); *Gonzalez v. Duncan*, 551 F.3d 875 (9th Cir. 2008) (finding 28-years-to-life sentence under Three Strikes law unconstitutionally disproportionate where final "strike" was failure to update annual sex offender registration within five days of the plaintiff's birthday). And the seriousness of Jane Doe's completed offenses is greater than if she had merely attempted them. The only point of dissimilarity with *Norris* that cuts in Jane Doe's favor is the fact that she is not a recidivist.

This one difference is insufficient to warrant an inference of disproportionality. To be sure, the Ninth Circuit treated the *Norris* plaintiff's recidivism as a "critical[ ]" point in favor of his sentence's proportionality. *Norris*, 622 F.3d at 1294. But that one factor gained its importance from the fact that the State in *Norris* sought to imprison the plaintiff for the rest of his life—a punishment that the Supreme Court has repeatedly called the "second most severe penalty permitted by law" and has even likened to a death sentence. *Graham*, 560 U.S. at 69 (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J.,

- 8 -

concurring in part and concurring in the judgment). It bears remembering that this is a *proportionality* analysis. As such, the more severe the punishment, the more grave the crime must be. Because life imprisonment without the possibility of parole is "a forfeiture that is irrevocable," *Graham*, 560 U.S. at 69, the Ninth Circuit in *Norris* required a correspondingly weighty justification for that punishment. The fact that the *Norris* plaintiff could not be trusted to avoid reoffending due to his history of recidivism provided such a justification. *Id.* at 1295-96.

By contrast, the punishment imposed on Jane Doe by Senate Bills 1236 and 1404 is far less severe. In *United States v. Williams*, 636 F.3d 1229, 1231 (9th Cir. 2011), the Ninth Circuit assessed the proportionality of a sentence of lifetime supervised release for an offender who possessed child pornography. Under the terms of his supervised release, the plaintiff was required to "meet regularly with his probation officer, to allow the officer to visit his home, to participate in substance abuse and sex offender treatment, to avoid the company of children, to permit unannounced searches of his computer, and to comply with the sex offender registration requirements of any state where he reside[d]." *Id.* at 1231-32. Yet notwithstanding these substantial limitations on "a criminal's liberty and privacy," the Ninth Circuit observed that supervised release was "a punishment far less severe than prison." *Id.* at 1232. The terms of supervised release at issue in *Williams*, when compared to the punishment imposed on Jane Doe by Senate Bills 1236 and 1404, appear more intrusive. Unlike the *Williams* plaintiff, Jane Doe is not required to undergo any type of treatment or therapy and is not barred from interacting with children. Therefore, like the punishment in *Williams*, the punishment imposed on Jane Doe by Senate Bills 1236 and 1404 is "far less severe" than a punishment of imprisonment. Accordingly, the Court concludes that Jane Doe's punishment under Senate Bills 1236 and 1404 is so much less severe than the sentence of life without parole in *Norris* that Jane Doe's non-recidivism is not enough to create an inference of disproportionality. *Cf. Taylor v. Myles*, 747 F. App'x 601, 602 (9th Cir. 2019) (upholding constitutionality of sentence of life imprisonment with the possibility of parole after ten years for first-time sexual offender convicted of lewdness

with a child under fourteen years of age).

This conclusion is bolstered by the Supreme Court's decision in *Harmelin v. Michigan*, 501 U.S. 957 (1991). In *Harmelin*, the Supreme Court upheld a sentence of life without parole for a first-time offender convicted of possessing 672 grams of cocaine. *Id.* at 961, 996; *id.* at 1021 (White, J., dissenting) (noting that the plaintiff was a first-time offender). It is not obvious that the crime in *Harmelin* was more severe than Jane Doe's child molestation offense. *Compare id.* at 1002 (Kennedy, J., concurring in part and concurring in the judgment) ("Possession, use, and distribution of illegal drugs represent one of the greatest problems affecting the health and welfare of our population." (citation omitted)) *with Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 4 (2003) ("Sex offenders are a serious threat in this Nation." (citation omitted)). A decision such as *Harmelin* underscores the point that the Cruel and Unusual Punishments Clause "does not require strict proportionality between crime and sentence." *Graham*, 560 U.S. at 60 (citation omitted).

The Court thus concludes that Senate Bills 1236 and 1404 do not impose a grossly disproportionate punishment on Jane Doe. Her as-applied claims of cruel and unusual punishment fail as a matter of law.

### b.     John Doe I

Plaintiff John Doe I was convicted of attempted sexual conduct with a minor, sexual abuse, and public sexual indecency. (Doc. 241 at 6.)[5]  The date of the offenses was July 27, 2015. (*Id.*) John Doe I's conviction involved a minor who was over twelve years old but under fifteen. (*Id.*) As alleged in the SAC, John Doe I was not convicted of a "dangerous

---

[5] Defendant alleges that John Doe I was convicted of two counts of attempted sexual conduct with a minor. (Doc. 174 ¶ 24.) Though the SAC states that "[t]wo counts in [John Doe I's] conviction were statutorily classified as dangerous crimes against children," (Doc. 241 at 6), the SAC does not indicate whether those were two counts of attempted sexual conduct with a minor or if, in addition to one count of attempted sexual conduct with a minor, John Doe I's sexual abuse offense was committed against a minor. Similarly, the SAC does not indicate how many victims John Doe I had. As with Jane Doe, the Court will construe all allegations in the light most favorable to John Doe I. The Court will assume that John Doe I committed only one count of attempted sexual conduct with a minor and will largely disregard the other, unspecified conviction for a dangerous crime against children. The Court will also assume that John Doe I had only one victim. Ultimately, the conclusion that follows does not depend on these assumptions.

offense" as defined by Arizona law, (*id.*), meaning that his offense did not "involv[e] the discharge, use or threatening exhibition of a deadly weapon or dangerous instrument or the intentional or knowing infliction of serious physical injury on another person." A.R.S. § 13-105. The SAC makes no mention of John Doe I having any other criminal convictions. The Court will assume that John Doe I has no criminal history beyond the convictions mentioned in the SAC. These details about John Doe I's offenses, limited as they might be, are sufficient for the Court to conclude that the punishment imposed by Senate Bills 1236 and 1404 is not grossly disproportionate.

The Court reaches this conclusion by comparing the gravity of John Doe I's offenses to the gravity of Jane Doe's offenses. Because Jane Doe and John Doe I face the same punishment, so long as their offenses are of the same gravity, the punishment imposed on John Doe I is not grossly disproportionate.

To make this comparison, the Court begins with the fact that the Arizona Legislature treated the offense that John Doe I attempted, sexual conduct with a minor, just as severely as it treated Jane Doe's molestation offense. Both offenses, when committed against a child who is under fifteen years old, were and continue to be class 2 felonies. A.R.S. § 13-1405(B) (2015) (sexual conduct with a minor); A.R.S. § 13-1410(B) (2004) (molestation of a child). Though not dispositive, the Ninth Circuit has recognized that "the statutory classification of crimes, like the fixing of prison terms for those crimes, involves a substantive penological judgment that, as a general matter, is properly within the province of legislatures, not courts." *Norris*, 622 F.3d at 1291-92 (citation modified). To be sure, John Doe I did not complete the crime, and that creates some difference between his offense and Jane Doe's, both as a matter of statutory classification—an attempted class 2 felony is punished as a class 3 felony, A.R.S. § 13-1001(C)(2) (2015)—and intuition, *Norris*, 622 F.3d at 1293 (observing that an attempted crime is typically considered less serious than a completed crime). However, despite giving some deference to the statutory classifications of the legislature, courts must still "look beyond the label of the crime" when gauging the gravity of an offense. *Id.* at 1292 (citation omitted). Doing so, the Court finds that John

Doe I's conviction reflects a higher degree of depravity that counterbalances the fact that he did not complete his crime. The action required to commit sexual conduct with a minor is, unquestionably, graver than the action required for molestation.

To see why, consider the elements of each offense. Under Arizona law, molestation is committed when a person "intentionally or knowingly engag[es] in or caus[es] a person to engage in sexual contact, except sexual contact with the female breast, with a child who is under fifteen years of age." A.R.S. § 13-1410(A) (2004). "Sexual contact" is defined as "any direct or indirect *touching*, *fondling* or *manipulating* of any part of the genitals, anus or female breast by any part of the body or by any object or causing a person to engage in such contact." A.R.S. § 13-1401(2) (2004) (emphasis added). Thus, according to the terms of § 13-1410(A), conduct as limited as *Norris*'s momentary touching over the clothes constitutes molestation. To be clear, the Court does not minimize the intrusiveness and harm involved in even such momentary touching. *See supra*, Section III.B.1.a. But compare that conduct with the actions penalized by Arizona's sexual conduct with a minor statute, and a clear difference in the magnitude of intrusiveness and harm appears. Sexual conduct with a minor is committed when a person "intentionally or knowingly engag[es] in *sexual intercourse* or *oral sexual contact* with any person who is under eighteen years of age." A.R.S. § 13-1405(A) (2015) (emphasis added). In the case of John Doe I, it was with a child under fifteen years of age. (Doc. 241 at 6.) Put bluntly, conduct covered by A.R.S. § 13-1405(A) will tend to be more than momentary and will involve a child's intimate exposure. Viewed in this light, the fact that John Doe I "merely" attempted to commit sexual conduct with a minor instead of completing a crime like molestation does not give the Court reason to treat John Doe I's offense as any less grave than Jane Doe's. Add to that the fact that John Doe I was also convicted of a second, albeit unspecified, dangerous crime against children, (Doc. 241 at 6), and it is clear that John Doe I's punishment under Senate Bills 1236 and 1404 is not grossly disproportionate.

#### c.    John Doe II

Plaintiff John Doe II was convicted of attempted child molestation. (Doc. 241 at 7.)

- 12 -

The date of the offense was June 28, 2008. (*Id.*) John Doe II's conviction involved a minor who was over twelve years old but under fifteen. (*Id.*) As alleged in the SAC, John Doe II was not convicted of a "dangerous offense" as defined by Arizona law, (*id.*), meaning that his offense did not "involv[e] the discharge, use or threatening exhibition of a deadly weapon or dangerous instrument or the intentional or knowing infliction of serious physical injury on another person." A.R.S. § 13-105. The SAC makes no mention of John Doe II having any other criminal convictions. The Court will assume that John Doe II has no criminal history beyond the conviction mentioned in the SAC.

Unlike with Jane Doe's as-applied challenge, the Court is unaware of any precedent from the Supreme Court or the Ninth Circuit that allows the Court to resolve John Doe II's challenge on the pleadings. In Jane Doe's case, the Court was able to rely on precedent, *Norris*, that weighed something like the least grave version of the offense that Jane Doe was convicted of and upheld a much more severe sentence than what Jane Doe faces. It followed, then, that the punishment imposed on Jane Doe by Senate Bills 1236 and 1404 could not be grossly disproportionate. By contrast, the Court has not found any decisions, even from the other Courts of Appeals or from district courts in this circuit, that deal with an as-applied proportionality challenge to a sentence for a single count of attempted molestation. The Court therefore lacks a comparator against which it can measure an assumed, least-grave-version of John Doe II's offense and conclude that John Doe II's challenge necessarily fails as a matter of law.

Similarly, the Court is unable at present to evaluate John Doe II's challenge by comparing his offense with Jane Doe's. Unlike Jane Doe, John Doe II did not complete the offense of molestation. That means that, *all else being equal*, the gravity of John Doe II's offense must be less than the gravity of Jane Doe's offense. *Norris*, 622 F.3d at 1293; *see also* A.R.S. § 13-1001(C) (classifying attempted felonies as one level lower than the classification assigned to completed felonies). In the absence of controlling precedent, a court must look at the "factual specifics" of the offense to gauge whether such a difference is so significant as to make the punishment imposed by Senate Bills 1236 and 1404 grossly

disproportionate. *Norris*, 622 F.3d at 1292 (citation omitted). Accordingly, resolution of John Doe II's as-applied challenge is not warranted on the pleadings alone.

### 2. Plaintiffs' Categorical Challenge

Having evaluated Plaintiffs' as-applied challenges, the Court turns to Plaintiffs' categorical challenge. A court evaluating a categorical challenge considers whether the gravity of a crime—not in any particular case, but as a general matter—or the characteristics of a type of offender make an entire class of sentences unconstitutionally disproportionate. *United States v. Shill*, 740 F.3d 1347, 1355 (9th Cir. 2014). When assessing a categorical challenge, a court performs two inquiries. First, the court looks to "objective indicia of society's standards, as expressed in legislative enactments and state practice to determine whether there is a national consensus against the sentencing practice at issue." *Id.* at 1356 (quoting *Graham*, 560 U.S. at 61). Next, the court must determine in its own independent judgment—guided by precedent and the Eighth Amendment's text, history, meaning, and purpose—whether the punishment is unconstitutionally disproportionate. *Shill*, 740 F.3d at 1356.

Plaintiffs have not alleged any facts to suggest that the punishment imposed by Senate Bills 1236 and 1404 is contrary to society's standards. No comparison is made, for example, between the burdens imposed by Senate Bills 1236 and 1404 and the requirements of similar legislation in other states. Although this does not necessarily mean that Plaintiffs failed to adequately plead their categorical challenge, *see Graham*, 560 U.S. at 61 (stating that, independent of the inquiry into societal consensus, a court must use its own informed judgment to gauge whether a punishment is categorically disproportionate), it does suggest that Plaintiffs' categorical challenge lacks merit.

This suggestion is confirmed when the Court performs the second inquiry, exercising its own judgment as guided by, among other things, controlling precedent. To begin, it helps to acknowledge that in almost all the cases where the Supreme Court has declared a sentence categorically disproportionate, the death penalty has been involved. *See, e.g.*, *Kennedy v. Louisiana*, 554 U.S. 407 (2008) (prohibiting the death penalty for

nonhomicide crimes); *Roper v. Simmons*, 543 U.S. 551 (2005) (prohibiting the death penalty for juvenile offenders); *Atkins v. Virginia*, 536 U.S. 304 (2002) (prohibiting the death penalty for offenders with low intellectual functioning). The only two exceptions to this pattern have involved the imposition of life imprisonment without the possibility of parole for juvenile offenders. *See Miller v. Alabama*, 567 U.S. 460 (2012) (prohibiting mandatory life-without-parole sentences for juvenile offenders); *Graham*, 560 U.S. 48 (prohibiting life-without-parole sentences for juveniles convicted of nonhomicide crimes). In these two noncapital cases, the Supreme Court emphasized two special considerations. First, juvenile offenders are categorically less culpable than adult offenders and more likely to reform. *Miller*, 567 U.S. at 471. A sentence of life without parole impermissibly ignores these two categorial traits. *Id.* at 472-73. Second, locking away a juvenile for life is qualitatively different from doing the same to an adult, because a juvenile will serve "more years and a greater percentage of his life in prison than an adult offender." *Graham*, 560 U.S. at 70. The longer period of imprisonment faced by a juvenile sentenced to life without parole makes such a sentence "akin to the death penalty" and therefore subject to a "distinctive set of legal rules." *Miller*, 567 U.S. at 475; *see also Graham*, 560 U.S. at 69.

The Ninth Circuit has indicated that because unusual considerations were at play in *Graham* and *Miller*, few categorical challenges to punishments will succeed. In *United States v. Shill*, 740 F.3d 1347, 1357 (9th Cir. 2014), the Ninth Circuit refused to apply the categorical approach when evaluating a proportionality challenge to a ten-year mandatory sentence for one count of online enticement of a minor to engage in sexual activity. The Ninth Circuit reasoned that, because the plaintiff "is not a juvenile, and his ten-year mandatory minimum sentence is in no way akin to the death penalty," the plaintiff's challenge must fail. *Id.*

Much the same can be said for Plaintiffs' categorical challenge here. Affected Level One offenders are not juveniles, so they are not categorically less culpable than other types of offenders. Moreover, the punishment imposed on affected Level One offenders by Senate Bills 1236 and 1404 is "in no way akin to the death penalty." Life imprisonment

without parole for a juvenile "deprives the convict of *the most basic liberties* without giving hope of restoration." *Graham*, 560 U.S. at 69-70 (emphasis added). Whatever burdens Senate Bills 1236 and 1404 impose on affected Level One offenders, the offenders still retain basic liberties such as freedom of movement, albeit with some guardrails. And although affected Level One offenders *are* more likely to reform than other types of criminal offenders, (*see* Doc. 241 at 14), that point is not dispositive. The Supreme Court in *Graham* and *Miller* was troubled by the notion that a sentence of life without parole totally negated juvenile offenders' capacity to reform by permanently excising them from society. *Graham*, 560 U.S. at 69 (characterizing life imprisonment without parole as a "forfeiture that is irrevocable"). But again, Senate Bills 1236 and 1404 allow affected Level One offenders to reenter society, even if incompletely. (*Cf.* Doc. 250 at 4 (arguing only that Senate Bills 1236 and 1404 prevent affected Level One offenders from "fully" reintegrating into society)). The capacity of affected Level One offenders to reform is acknowledged and respected, for an affected Level One offender who does not reoffend has the opportunity to make a new life for him or herself. In sum, the Court, exercising its independent judgment in light of the precedents of the Supreme Court and Ninth Circuit, concludes that Senate Bills 1236 and 1404 do not categorically impose a grossly disproportionate punishment on affected Level One offenders.

Having thus reviewed each of Plaintiffs' as-applied challenges and their categorical challenge, Count 10 is dismissed as to Plaintiffs Jane Doe, John Doe I, and Minor Doe. Plaintiff John Doe II's categorical challenge is also dismissed. However, John Doe II may proceed with his as-applied challenge under Count 10.

Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, leave to amend should be given freely "when justice so requires." But leave to amend is not required when amendment "would cause the opposing party undue prejudice, is sought in bad faith, constitutes an exercise in futility, or creates undue delay." *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989). Here, leave to amend as to the dismissed claims would constitute an exercise in futility. When amending a complaint, a plaintiff may not

allege new facts that are inconsistent with the facts alleged in an earlier complaint. *Reddy v. Litton Industries, Inc.* 912 F.2d 291, 296-97 (9th Cir. 1990). Plaintiffs' dismissed claims fail not because of a lack of factual allegations but because the facts alleged foreclose, as a matter of law, the dismissed claims. Dismissal is therefore without leave to amend.

## IV.   CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Judgment on the Pleadings, In Part (Doc. 243) is **GRANTED IN PART AND DENIED IN PART.** Count 10 is dismissed as to Plaintiffs Jane Doe, John Doe I, and Minor Doe. The Motion is denied as to Plaintiff John Doe II's as-applied challenge under Count 10.

**Dated this 13th day of August, 2026.**

Michael T. Liburdi
United States District Judge